IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-3097-WJM-KLM

NICOLE SIMMONS,

    Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts company,
PEERLESS INDEMNITY INSURANCE COMPANY, an Illinois company,

    Defendants.

---

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Nicole Simmons ("Plaintiff") sues Defendants Liberty Mutual Insurance Company and Peerless Indemnity Insurance Company ("Defendants") for underinsured motorist ("UIM") benefits that Defendants have refused to pay. Currently before the Court is Defendants' Motion for Summary Judgment (ECF No. 30) arguing that Plaintiff's causes of action are barred by the applicable statute of limitations. For the reasons set forth below, Defendants' motion is denied.

### I. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if

the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTS

These facts are undisputed:

- **November 20, 2011.** A vehicle driven by non-party Pamela Curran strikes the vehicle in which Plaintiff was riding as a passenger ("Accident"). (ECF No. 30 at 2, ¶ 1.) Curran is insured under an American Family policy with a liability limit of $100,000. (*Id.* ¶ 2.) The driver of the vehicle in which Plaintiff is riding is insured by Defendant Peerless, and that policy includes UIM coverage. (*Id.* ¶ 3.)

- **November 14, 2014.** Plaintiff signs a release of all claims against Curran in exchange for $100,000 (Curran's policy limit), and her counsel provides the signed release form and payment instructions to American Family. (*Id.* at 3, ¶ 6; ECF No. 33 at 2–3, ¶ 5(A)(ii).)

- **November 18, 2014.** The American Family settlement check physically arrives at the office of Plaintiff's counsel. (*Id.* ¶ 5(A)(vi).)

- **November 19, 2014.** Plaintiff endorses the American Family check. (*Id.*

¶ 5(A)(vii).)[1]

- **February 12, 2015.** Plaintiff's counsel sends a letter to Defendants demanding UIM benefits under the Peerless policy and stating, among other things, that "Ms. Simmons settled her underlying liability claim for policy limits of $100,000 on November 14, 2014." (ECF No. 30 at 3, ¶ 8.)

- **November 16, 2016.** Plaintiff files this lawsuit. (ECF No. 1-1.)

### III. ANALYSIS

**A.  Framing the Dispute**

One of Defendants' affirmative defenses is that the statute of limitations on Plaintiff's UIM claim expired before she filed this lawsuit. (ECF No. 10 at 9; ECF No. 30 at 3, ¶ 10.) Defendants move for summary judgment on this defense, arguing that it may be resolved in their favor as a matter of law on the undisputed facts. (*Id.* at 5.)

Defendants' argument turns on the meaning of the following statutory text, to which the Court has added line breaks, indentation, and bracketed numerals for clarity:

> An action or arbitration of an "underinsured motorist" insurance claim, as defined in section 10-4-609(4), C.R.S., shall be commenced or demanded by arbitration demand within three years after the cause of action accrues;
>
> except that, if the underlying bodily injury liability claim against the underinsured motorist is preserved by
>
> > [1] commencing an action against the underinsured motorist or
> >
> > [2] by payment of either the liability claim settlement

---

[1] Defendants claim that this endorsement was purely for purposes of depositing the check into Plaintiff's counsel's trust account, and that Plaintiff did not receive her share of the settlement until sometime later. (ECF No. 34 at 3–4.) For present purposes, this contention is immaterial.

3

> or judgment within the time limit specified in sections
> 13-80-101(1)(n) [three-year statute of limitations for
> bodily injury actions] and 13-80-102(1)(d) [two-year or
> four-year statute of limitations for wrongful death
> actions],

> then an action or arbitration of an underinsured motorist
> claim shall be timely if such action is commenced or such
> arbitration is demanded within two years after the insured
> received payment of the settlement or judgment on the
> underlying bodily injury liability claim.

Colo. Rev. Stat. § 13-80-107.5(1)(b). The two indented clauses, above, will become important below, and so the Court will refer to them as Option 1 and Option 2.

To summarize the effect of this statute: The general limitations period for a UIM claim is "three years after the cause of action accrues." Colo. Rev. Stat. § 13-80-107.5(1)(b). The accrual date is the date when both the fact of injury or damage and its cause are known or should have been known with reasonable diligence. *Id.* § 13-80-107.5(3). In a straightforward case, then, a UIM claim accrues on the date of the car accident and expires three years later. However, the Colorado Legislature also provided for a potential two-year extension of the statute of limitations on a UIM claim. *Id.* § 13-80-107.5(1)(b). As relevant here, that additional two years begins to run on the date "the insured receive[s] payment of the settlement . . . on the underlying bodily injury liability claim." *Id.*

The question presented, generally speaking, is how to determine the date on which the insured "receive[s] payment" of the settlement. Defendants argue that Plaintiff received payment, within the meaning of the statute, on November 14, 2014, when she executed the settlement and release documents. (ECF No. 30 at 6.) This date is more than two years before November 16, 2016, when this lawsuit commenced.

4

Plaintiff counters that she, personally, must obtain physical possession of her settlement check before she has received payment within the meaning of the statute. (ECF No. 33 at 5–7.) Plaintiff says that she obtained the necessary physical possession on November 19, 2014, when the check was delivered to her for endorsement. (*Id.* at 9.) She then filed her lawsuit three days shy of the two-year anniversary of that event.

**B.     Potentially Relevant Case Law**

Plaintiff and Defendants both put forward recent decisions that they believe support their respective positions.

   1.     *Pham* (Colo. 2013)

Plaintiff points to *Pham v. State Farm Automobile Insurance Co.*, 296 P.3d 1038 (Colo. 2013), for the proposition that "received payment" means "actually received payment." (ECF No. 33 at 5.) *Pham* indeed contains that phrase, but it is both *dicta* and unhelpful.

The major question in *Pham* was whether the statute of limitations extension for *un*insured motorist (UM) claims—"two years after the insured knows that the particular tortfeasor is not covered by any applicable insurance," Colo. Rev. Stat. § 13-80-107.5(1)(a)—should somehow inform the statute of limitations extension for *under*insured motorist (UIM) claims. *Pham*, 296 P.3d at 1042–43. The plaintiffs argued that the UIM statute of limitations should be interpreted to begin running from the date that the victim learns the tortfeasor is underinsured. *Id.* The Colorado Supreme Court found this contention contrary to the UIM statute's text. *Id.* at 1043. In so doing, the court explained the differences between the two-year extensions in the UM and UIM contexts, and did so using a phrase on which Plaintiff relies, "actually receives

5

payment":

> The limitations provisions of 13-80-107.5(1)(a) [governing UM claims] and (1)(b) [governing UIM claims] each allow for two separate measures of the limitations period. An action for recovery on either an uninsured or underinsured insurance claim may always be brought within three years of the time both the existence and cause of the death, injury, or damage giving rise to the claim are known or should have been known. § 13-80-107.5(1) and (3). In addition, however, if a timely action is commenced against the uninsured or underinsured motorist on the underlying bodily injury liability claim, an action on an *uninsured* motorist claim may be brought within two years after the insured knows that the particular tortfeasor is not covered by any applicable insurance, § 13-80-107.5(1)(a), and an action on an *underinsured* motorist claim may be brought within two years after the insured victim receives payment of the settlement or judgment on the underlying bodily injury liability claim, § 13-80-107.5(1)(b). Further, if the insured victim <u>actually receives payment</u> of a settlement or judgment on his bodily injury liability claim within the time allowed for filing an action against the underinsured motorist on that claim, an action on an *underinsured* motorist claim may also be brought within two years of that payment, <u>even though an action on the claim was never actually filed</u>. *Id*.

*Id*. at 1042 (italics in original; underscoring added). As the full context makes clear, the Colorado Supreme Court was not considering what it means to "receive payment." Rather, it uses "actually" to contrast the two ways in which UIM claims may be "preserved" despite the three-year limitations period: Option 1—filing a bodily injury lawsuit against the tortfeasor, or Option 2—receiving a settlement from the tortfeasor before the statute of limitations runs on the underlying bodily injury claim. In this instance, "actually receives" is synonymous with "happens to receive."

Later in *Pham*, however, the court uses "actually" again, and in a manner that comes much closer to supporting Plaintiff's interpretation:

> Colorado's statute not only provides the insured a term of

6

> years following the injury within which to file, much like a tort claim, but also provides him with a period of time after he settles or reaches judgment against the tortfeasor and thus becomes aware of an uncompensated loss. In fact, subsection (1)(b) [governing UIM claims] does not merely allow filing within two years after a settlement [or] judgment is reached; it allows an insured to wait to file until after he has actually received payment of that settlement or judgment.

*Id.* at 1045. Plaintiff favors this language for obvious reasons. It recognizes a distinction between the act of settlement and the act of receiving payment, and it declares that "actually" receiving payment is the relevant trigger.

Even so, this language is *dicta*. The specific question of what constitutes receipt of payment was not before the Colorado Supreme Court. Moreover, "actually" does not actually resolve anything. Does this refer to the date on which the plaintiff gains personal possession of her share of the settlement? Is it the date her attorney, as her agent, receives the settlement check? Is it the date the check clears? Or something else? Does it matter if the settlement comes by wire transfer rather than by check? And so forth.

In short, although the latter-quoted portion of *Pham* undeniably contains language favorable to Plaintiff, *Pham* contains no holding that binds this Court, nor any analysis of the question at issue here.

    2.    <u>*Stoesz* (Colo. App. 2015)</u>

Plaintiff also points to the Colorado Court of Appeals's decision in *Stoesz v. State Farm Mutual Automobile Insurance Co.*, 2015 COA 86, ___ P.3d ___, which supposedly endorsed a definition of "payment" that requires "delivery of money." (ECF No. 33 at 6.) *Stoesz*, however, is much more complicated.

7

Understanding *Stoesz* requires keeping in mind the point made in *Pham* that two different events can "preserve" a UIM claim despite the normal three-year statute of limitations: Option 1—file a lawsuit against the tortfeasor, or Option 2—receive a settlement from the tortfeasor before the statute of limitations runs on the underlying bodily injury claim. *Stoesz* presented a question regarding Option 2 and its connection to the statute of limitations *for a bodily injury claim*.

In *Stoesz*, the plaintiff privately negotiated with the tortfeasor's insurance company, Progressive. 2015 COA 86, ¶ 3. Nine days before the time would expire to bring a bodily injury lawsuit against the tortfeasor, the plaintiff "sent an e-mail to Progressive confirming a policy-limits settlement." *Id.* About five weeks later, after the expiration of the bodily-injury statute of limitations, Progressive issued the settlement check, and it was apparently undisputed that this equated to "receiving the settlement payment." *Id.* Two years minus four days after that, the plaintiff sued her own insurance company, State Farm, for UIM benefits. *Id.* The plaintiff believed this was within the two-year extension of the statute of limitations, but State Farm countered that the two-year extension was never triggered because the payment had not occurred before expiration of the *bodily injury* statute of limitations. *Id.* ¶ 5. Accordingly, the question before the Court of Appeals was the proper definition of "payment" in the UIM statute; and, in turn, whether "payment," properly defined, happened before the bodily injury limitations period expired.

The Court of Appeals began by quoting dictionary definitions, including the dictionary definition Plaintiff favors:

"Payment" means "the act of paying or giving compensation:

8

> the discharge of a debt or obligation." *Webster's Third New International Dictionary* 1659 (2002). According to *Black's Law Dictionary* 1243 (9th ed. 2009), "payment" means "[p]erformance of an obligation," which occurs "*by the delivery* of money or some other valuable thing accepted in partial or full discharge of the obligation"; or "[t]he money or other valuable thing *so delivered* in satisfaction of an obligation." (Emphasis added.)

*Id.* ¶ 11. Having set forth these definitions, the Court of Appeals turned to the plaintiff's argument that "payment" was ambiguous because undefined, and therefore should be construed in favor of full compensation for injured motorists. *Id.* ¶ 12. The Court of Appeals rejected this argument, *id.* ¶ 13, and then turned to the plaintiff's "parallel argument . . . that 'payment' is ambiguous because it is susceptible to more than one meaning," *id.* ¶ 14. For example, said the plaintiff, "'payment' could mean the receipt of funds; the date a payment check 'was prepared by [the] insurer'; or, as she urge[d] to avoid the time bar, 'the date the parties reached a legally enforceable contractual agreement to pay.'" *Id.* (first alteration in original).

The court acknowledged that the previously-quoted *Black's Law Dictionary* definition appeared to support the plaintiff's "receipt of funds" possibility, but the court rejected that definition under the circumstances. *Id.* ¶¶ 15–16. The court's reasoning on this question is, respectfully, somewhat questionable. To understand why, this Court first repeats the relevant UIM statutory language with line breaks, indentation, and bracketed numbers added for clarity, and also with underscoring for reasons that will become apparent shortly:

> An action or arbitration of an "underinsured motorist" insurance claim, as defined in section 10-4-609(4), C.R.S., shall be commenced or demanded by arbitration demand within three years after the cause of action accrues;

9

> except that, if the underlying bodily injury liability claim
> against the underinsured motorist is preserved by
>
>> [1] commencing an action against the underinsured
>> motorist or
>>
>> [2] by <u>payment</u> of either the liability claim settlement
>> or judgment within the time limit specified in sections
>> 13-80-101(1)(n) and 13-80-102(1)(d),
>
> then an action or arbitration of an underinsured motorist
> claim shall be timely if such action is commenced or such
> arbitration is demanded within two years after the insured
> <u>received payment</u> of the settlement or judgment on the
> underlying bodily injury liability claim.

Colo. Rev. Stat. § 13-80-107.5(1)(b).

The Colorado Court of Appeals's crucial argumentative move was to conclude that "payment" in Option 2 must mean something different than "received payment" in the flush clause that follows, because "[t]he General Assembly is presumed to have intended the difference between them." *Stoesz*, 2015 COA 86, ¶ 7. Given this "presumed difference," the plaintiff's "argument that 'payment' could mean when the settlement payment was received . . . would render the General Assembly's use of the term 'received' superfluous." *Id.* The court then went on to reject the viability of the plaintiff's other proposed interpretations, and thereby concluded that the statute was not susceptible of multiple meanings, and therefore not ambiguous. *Id.* ¶¶ 17–18.

The Court will return to this question of "payment" versus "received payment" shortly, but the remainder of *Stoesz*'s analysis bears summarizing first.

*Stoesz* went on to acknowledge that, given "the statutory distinction between 'payment' and 'received payment,'" the plaintiff's "example of payment by entering into a settlement agreement cannot be rejected on the sole basis that it does not encompass

10

receipt." *Id.* ¶ 19.  In other words, if "payment" in Option 2 is not the same as *receiving* payment, then "payment" might be something of a term of art, potentially encompassing the consummation of the settlement.

But the court rejected such an interpretation for two reasons.  "First," it said, "uncertainty could result . . . because disputes over enforceability have arisen when—as here—parties have exchanged terms but not reduced their settlement to a single writing."  *Id.* ¶ 20.  "Second," the court continued,

> setting aside possible uncertainty over enforceability, such an agreement could extend the deadline for filing UIM claims beyond the additional two years provided . . . because the additional two years runs from the date "the insured received payment of the settlement."  But a settlement agreement that postponed payment—such as until the first day of the next fiscal or calendar year—would significantly extend that two year period.

*Id.* ¶ 21.

Finally, the court announced that "had the General Assembly intended for preservation to occur based on a binding settlement agreement, it could have said so." *Id.* ¶ 24.  But, interestingly, the court nowhere announced a definition of "payment."  It instead limited its holding to the narrowest ground possible, namely, that consummation of a settlement does not substitute for "payment" in Option 2.  *See id.* ¶ 5.

The Court now returns to *Stoesz*'s conclusion that "payment" in Option 2 must be interpreted separately from "received payment" in the flush clause that follows.  This interpretation is linguistically permissible, but it only makes sense by presuming that, when enacting Option 2, the legislature had in mind an unusual scenario in which the tortfeasor's insurance company cuts a check before the bodily injury limitations period expires and the plaintiff gains possession of the check after that limitations period

11

expires. Or in other words, the claim is *preserved* by *issuance* of payment, and the two-year extension is *triggered* by *receipt* of payment. This is such a unique scenario that one would expect the legislature to make it more explicit. It seems more straightforward and plausible, in this Court's view, to presume that "payment" in Option 2 refers to the same event described as "received payment" later in the sentence.

But the Court need not resolve that question here. What matters for present purposes is the light, if any, that *Stoesz* may shed on whether the act of consummating a settlement means that one has "received payment" within the meaning of the statute. Although *Stoesz* insists that it is interpreting only "payment," not "received payment," its reasoning about uncertainty—precisely when a settlement has been consummated— and the ability to manipulate the statute of limitations could apply equally to "received payment." In addition, *Stoesz* implies that the *Black's Law Dictionary* definition of "payment" that requires delivery and acceptance of money is the appropriate definition for "received payment," in contrast to "payment" standing alone.

Still, as in *Pham*, all of this is *dicta* as to the question before this Court, strictly speaking. And in any event, federal courts sitting in diversity are not bound by the decisions of state intermediate appellate courts. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240–41 (10th Cir. 2003).

3. *Westby* (D. Colo. 2016)

Defendants favor an unpublished disposition from U.S. District Judge R. Brooke Jackson of this District, *Westby v. State Farm Mutual Automobile Insurance Co.*, 2016 WL 471357 (D. Colo. Feb. 8, 2016). *Westby* involved the unique circumstance in which the parties to the underlying bodily injury claim had reached a settlement in principle

12

and the insurance company simultaneously mailed to the plaintiff's attorney both the to-be-executed settlement agreement and the settlement check. *Id.* at *1. The cover letter for that mailing specifically requested that the plaintiff's attorney "not disburse the settlement funds until all the settlement paperwork ha[d] been returned." *Id.* (internal quotation marks omitted). The plaintiff later filed a UIM lawsuit more than two years after the settlement check had arrived in her lawyer's office, but less than two years after executing the settlement documents and receiving her share of the check. *Id.* at *1–2. Judge Jackson was therefore asked to decide the relevant trigger of the two-year extension: the lawyer's receipt of the check (the defendant's position), or the plaintiff's execution of the settlement documents (the plaintiff's position)?

Judge Jackson noted that the insurance policy at issue contained language consistent with the UIM statute, but which also specified that "received payment" included "the date that either the insured *or the legal representative* 'received payment.'" *Id.* at *4 n.3 (emphasis added). Judge Jackson found this distinction relevant and therefore focused on construing the insurance policy rather than the UIM statute. *Id.* at *3–7 & n.3. Judge Jackson ultimately concluded that, under the policy as applied to the facts of the case, "received payment" meant the date that the plaintiff executed the settlement documents, because that was the date the plaintiff became "legally entitled to receive funds," *i.e.*, the funds already in her attorney's possession. *Id.* at *6.

Defendant argues that *Westby* established a "legally entitled to receive funds" rule that applies whether or not a plaintiff finds herself in the same circumstances as the *Westby* plaintiff. In other words, Defendant believes that *Westby* sets forth a general principle rather than a narrow resolution under the unique facts of that case. (*See* ECF

13

No. 30 at 7.) The Court disagrees, and in any event, *Westby* is both unpublished and otherwise not binding on the undersigned, given that district judges' decisions do not bind other district judges. *Hernandez v. Ray Domenico Farms, Inc.*, 250 F. Supp. 3d 789, 801 (D. Colo. 2017) ("[a]lthough the judges of this District strive to respect each other's decisions, we do not bind each other").

    4.    *Kovac* (Colo. App. 2017)

Defendant similarly favors *Kovac v. Farmers Insurance Exchange*, 401 P.3d 112 (Colo. App. 2017), *cert. denied*, 2017 WL 3593981 (Colo. Aug. 21, 2017). This case raised materially the same set of facts as *Westby*—transmittal of a to-be-executed settlement agreement and the settlement check simultaneously, with a subsequent UIM action filed more than two years after physically receiving the check, but less than two years after executing the settlement agreement. *Id.* ¶¶ 4–7. The Colorado Court of Appeals approved of Judge Jackson's *Westby* analysis and similarly concluded that "received payment" under the circumstances referred to "the date that [the plaintiff] accepted the settlement agreement . . . and was legally entitled to the funds." *Id.* ¶¶ 15–21, 33.[2]

As with *Westby*, Defendant treats *Kovac* as establishing a general principle rather than resolving the specific and unusual dilemma presented there. (ECF No. 30 at 6–7.) The Court again disagrees, and also reiterates that, in any event, decisions from the Colorado Court of Appeals are not binding on this Court even as to matters of Colorado law. *Clark*, 319 F.3d at 1240–41.

---

[2] The Court of Appeals understood that Judge Jackson was focusing on the policy language in *Westby*, but it nonetheless found Judge Jackson's analysis persuasive as to the statutory construction question. *See id.* ¶¶ 15, 31.

**C.     The Court's Construction of "Received"**

As the foregoing demonstrates, the parties have cited no binding authority on the question presented here, nor any particularly useful authority. The Court therefore must predict what the Colorado Supreme Court would hold if asked to interpret "received payment" under the circumstances of this case, *see, e.g., Vanover v. Cook*, 260 F.3d 1182, 1186 (10th Cir. 2001) ("In the absence of definitive direction from the highest court of the state . . . we must predict the course that body would take if confronted with the issue." (internal quotation marks omitted)), which presents a much more traditional scenario than those analyzed previously. The parties executed the settlement documents and only then did the Plaintiff's attorney receive the settlement check.

The Court further emphasizes the precise question presented: whether executing settlement documents, standing alone, amounts to "receiv[ing]" payment. If the Court rejects this interpretation, the Court need *not* go on and decide precisely when Plaintiff received payment within the meaning of the statute—when it arrived in her lawyer's office? when the lawyer or the lawyer's staff actually opened the envelope? when she endorsed the check? etc.—because none of these events happened more than two years before Plaintiff filed this lawsuit.

Colorado courts strive to "read [statutory] words and phrases in context, according them their plain and ordinary meanings." *Coloradans for a Better Future v. Campaign Integrity Watchdog*, 409 P.3d 350, ¶ 16 (Colo. 2018) (citation omitted). The primary meaning of "receive" is "to come into possession of." *See* Merriam-Webster Online, *s.v.* "receive" (definition 1), at https://www.merriam-webster.com/dictionary/receive (last accessed Feb. 27, 2018). Putting this into the past tense, then, the UIM

15

statute looks to when the plaintiff came into possession of payment.

Such language most naturally refers to an event other than placement of the last needed signature on a settlement agreement. There are, of course, certain legal contexts when the final signature gives rise to a form of "possession" or equitable title. For example, full execution likely could create an account receivable on which another party could exercise a security interest. It would almost certainly be an asset of a bankruptcy estate, or, if unpaid at death, of the decedent's estate. And if the other party to the settlement failed to pay, the plaintiff would have a basis to sue. But coming into possession of this kind of interest is not a plain and ordinary meaning of "received payment." The Court therefore concludes that the Colorado Legislature did not mean "received payment" to refer to coming into "possession" of what is, in reality, a non-possessory legal or equitable interest in a forthcoming payment.

Defendant argues, however, that any other interpretation is "unworkable" because "received payment," plainly understood, is too indefinite as between the various events that may qualify, such as counsel receiving the check versus the plaintiff receiving the check, receiving the check in the mail versus endorsing it or depositing it, and so forth. (ECF No. 34 at 7.) The Court does not deny that these sorts of scenarios could be problematic in future cases. However, Defendant's argument is essentially that "received payment" is facially so indefinite as to be meaningless, and can only be salvaged by divorcing it from the act of coming into possession of money. The Court disagrees. "Received payment" is not so indefinite that the Court must abandon the phrase's plain meaning, particularly where there is no argument that it would be legally relevant in this case to distinguish between physical receipt of the check versus

endorsing it versus depositing it, or some other event.

Accordingly, Defendants' are not entitled to judgment as a matter of law on their statute of limitations defense.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Summary Judgment (ECF No. 30) is DENIED; and

2. This matter REMAINS SET for a Final Trial Preparation Conference on August 24, 2018 at 2:30 p.m., and a five-day jury trial beginning on September 10, 2018, both in Courtroom A801.

Dated this 2nd day of March, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge